IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  04-cv-02048-LTB

JOHN A. FLEMING,

   Plaintiff,
v.

JO ANNE B. BARNHART, Commissioner of Social Security,

   Defendant.
_____

ORDER
_____

  Plaintiff, John A. Fleming, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to 42 U.S.C. §§ 401-433.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral argument would not materially assist in the determination of this motion.  After consideration of the motion and all related pleadings, as well as the administrative record, I REVERSE and REMAND the SSA Commissioner's final order for further proceedings.

## I. STATEMENT OF THE CASE

  Plaintiff seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits filed on December 21, 2001.  [Administrative Record ("AR") 50]  The application was initially denied on March 12, 2002.  [AR 33]  Upon Plaintiff's request, an Administrative Law Judge (ALJ) conducted an evidentiary hearing on February 3, 2003.  [AR 13, 39, 45, 188]  The ALJ subsequently issued a written ruling on June 17, 2003, denying Plaintiff's application on the basis that his medically determinable impairments do not prevent him from

performing his past relevant work. (Step Four).  [AR 18]  On September 17, 2004, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 6]  *See* 20 C.F.R. § 404.981.  Plaintiff timely filed his complaint with this court on October 4, 2004, in which he seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in June of 1948, and was 54 years old on the date of the ALJ's decision.  [AR 28, 32]   He has a high school education, plus two years of college.  [AR 28, 75, 194 ]   His past relevant work history includes working as a forklift operator/industrial truck operator, a scrubber/sweeper-cleaner, other industrial, and as a hand packer.  [AR 28, 208]  Plaintiff alleges that he is disabled as of May 1, 2000, due to bilateral knee problems. [AR 21, 69, 196]

In September 2000, Plaintiff went to Dr. James C. Geyman complaining of right knee pain, "catching" and stiffness. [AR 132-33]  The examining doctor's impression and an x-ray revealed "severe osteoarthritis."   [AR 127]   In a follow-up visit in December 2000, Plaintiff was diagnosed with probable derangement of the meniscus of his right knee. [AR 123-24]  An x-ray revealed considerable osteoarthritic changes. [AR 121]  In January 2001, Plaintiff saw Dr. David E. Gladu, who diagnosed Plaintiff with degenerative joint disease.  Because Plaintiff was symptomatic only with episodes of instability, he was provided a brace.  [AR 113]   In August 2001, the Plaintiff presented again to Dr. Geyman with little pain, instability or effusion, but complained that his knee "grates and grinds." [AR 111]   At that point, the doctor recommended postponement of any surgical intervention until Plaintiff's symptoms worsened.  [AR 111]

Plaintiff underwent a consultive examination in February 2002, during which Dr. Michael Finch found right knee laxity of his MCL and LCL ligaments. [AR 139]  X-rays revealed moderate to severe degenerative changes in both knees. [AR 141]  Dr. Finch diagnosed Plaintiff with bilateral knee pain, and opined that he could:  lift 40 pounds frequently and 50 pounds occasionally; he could sit, stand and walk for an eight-hour workday with reasonable breaks; and he could occasionally climb stairs and stoop.  [AR 140]  Plaintiff was restricted from climbing ladders over six feet, and repetitive kneeling, crouching and crawling.  [AR 140]

Plaintiff's questionnaires indicated that he experienced intermittent dull pain in his knees and that prolonged standing on hard surfaces exacerbated the pain. [AR 78]  He stated that he took Ibruprofen 4-5 time a week and that exercising on a bike and leg lifts helped to alleviate the pain. [AR 79]   He reported that he performed household chores, played golf, and walked with his wife. [AR 79-80]  He asserted that he usually slept 7 hours a night. [AR 79]

At the hearing, Plaintiff testified that he decided to retire after thirty years on the job because his knees were bothering him. [AR 196]  His stated that he drove, performed chores and used a semi-recumbent exercise bike for 50 minutes, five times a week. [AR 199-200]  He testified that his knee pain would "come and go" and that his doctors advised him that he would eventually have to have them replaced. [AR 201-2]  He testified that he could sit for an hour and that he could lift 30-40 pounds. [AR 204]  The ALJ found that "claimant's statements and testimony are consistent with the evidence as a whole and ... [were] generally credible."  [AR 29]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If he is, disability benefits are denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c).  If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, he is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that the impairment(s) and assessed residual functional capacity ("RFC") prevents him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(e) & (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Secretary has the burden of proving that

the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience.  20 C.F.R. § 404.1520(g).  The claimant is entitled to benefits if the Secretary cannot establish that he can perform an alternative work activity and that this type of job exists in the national economy.  The Secretary may rely upon the Medical Vocational Guidelines (the "grids") to meet this burden.  *Bowen v. Yuckert, supra*, 482 U.S. at 146.

## IV.  RULING

The ALJ first determined that there is no evidence that Plaintiff had engaged in any substantial gainful activity since the onset date of disability (Step One).  [AR 31]  The ALJ next found that Plaintiff's clinical records supported a finding of a severe impairment in the form of bilateral degenerative joint disease in his knees and a non-severe impairment of a repaired left inguinal hernia (Step Two).  [AR 25]   Because Plaintiff's medically determinable impairments were not equivalent to those impairments deemed to be so severe as to preclude substantial gainful employment (Step Three), the ALJ went on to determine whether Plaintiff retained the RFC to perform the requirements of his past relevant work (Step Four).  [AR 26]

After reviewing Plaintiff's medical records and the his credibility, the ALJ found that Plaintiff retained the RFC to:

> lift/carry 40 pounds frequently and 50 pounds occasionally, if permitted postural shifts that do not require [Plaintiff] to leave the workstation.  He can occasionally stoop, climb stairs, and crouch, but is precluded from working, balancing, or climbing at heights, kneeling, crawling, operating foot controls, and working around exposure to temperature extremes. [AR 31]

Given this RFC assessment, the ALJ determined that Plaintiff past relevant work as a hand packer did not require the performance of work-related activities precluded by his RFC and, thus, the ALJ ruled that Plaintiff was not disabled at Step Four.  [AR 31]

On appeal to the SSA Appeals Council, the Administrative Appeals Judge found no reason to review the ALJ's decision and thus denied Plaintiff's request for review. [AR 6] The SAA Appeals Council addressed Plaintiff's new evidence, submitted after the ALJ's decision, but found that the information did not provide a basis for changing the disability decision. Specifically, because the information was "about a later time," the SSA Appeals Council determined that it did not effect the ALJ's decision that Plaintiff was not disabled beginning on or before the date of his decision. [AR 7]   As a result, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. [AR 6]

## V. STANDARD OF REVIEW

The function of my limited review here is "to determine whether the findings of fact of the Secretary are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  I examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Casias v. Secretary*, *supra*, 933 F.2d at 800 (*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71

S.Ct. 456, 95 L.Ed. 456 (1951)). In addition, the failure to apply the appropriate legal standards also constitutes grounds for reversal. *Henrie v. U.S. Dept. of Health & Human Servs.,* 13 F.3d 359, 360 (10th Cir. 1993)(*citing Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir.1993)).

## VI. ANALYSIS

On appeal, Plaintiff argues, among other things, that the ALJ erred when assessing his residual functional capacity ("RFC") at Step Four because the finding was not supported by substantial evidence; the testimony of the vocational expert, which the ALJ relied upon, was not based on all the necessary RFC exertional requirements; and the ALJ failed to apply a heightened duty of inquiry required when a Plaintiff, as here, is not represented by counsel.

Step Four of the sequential analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); s*ee also Doyal v. Barnhart* 331 F.3d 758, 760 (10th Cir. 2003). In the first phase, the ALJ must evaluate the claimant's RFC. *See* 20 C.F.R. § 404.1565. An RFC assessment evaluates a claimant's impairments, and any related symptoms such as pain, which may cause physical and mental limitations that affect what a claimant can do in a work setting based on all the relevant evidence in the case record. Thus, the RFC "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); SSR 96-8p. In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *Winfrey v. Chater*, *supra*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *Winfrey v. Chater*, *supra*, 92 F.3d at 1023; SSR 82-62.

In this case, Defendant concedes that the ALJ's evaluation of Plaintiff's RFC failed to address Plaintiff's capacity to stand and walk in an eight hour work day. Defendant does not argue that this functional assessment is not relevant or applicable here. Instead, she maintains that because the ALJ gave "great weight" to Dr. Finch who had opined that Plaintiff could "sit, stand, and walk for an eight hour workday with reasonable breaks" the omission constitutes harmless error. I disagree.

First, the ALJ is obligated to make specific findings at each of the RFC assessment phases, which was clearly not done here. *Winfrey v. Chater*, *supra*, 92 F.3d at 1023 (*citing Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.1993)).

In addition, contrary to Defendant's argument, the standing/walking limitation was not adequately addressed in the operative hypothetical presented to the vocational expert. At the hearing, the ALJ asked the vocational expert about the ability to perform Plaintiff's past jobs with the following hypothetical work restrictions: the ability to lift and carry 40 pounds on a frequent basis and 50 pounds on an occasional basis; no work at heights; no kneeling, crawling or operation of repetitive foot controls; only occasional stooping, climbing of stairs, and crouching; and "[p]ostural shifts that do not require a leave of the work station." [AR 209]   The vocational expert's response was that although the repetitive operation of foot controls precluded some of Plaintiff's past jobs, someone with those limitations could perform the job of a hand packer. [AR 210]   Although the ALJ then changed the hypothetical to include the limitation of "seated type work ... which would be sedentary work" – clarified to "sitting is six hours out of eight hours, standing and walking is two out of eight hours" [AR 210] –  I disagree with Defendant's assertion that a restriction of "[p]ostural shifts that do not require a leave of the work station" adequately

8

addresses Plaintiff's capacity to stand and walk during an eight-hour workday. *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991)("testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision"); *see also* SSR 96-8p (without an "initial function-by-function assessment it may not be possible to determined whether the individual is able to do past relevant work").

Finally, I agree with Plaintiff's assertion that the ALJ failed in exercising his "duty of inquiry"– which was heightened here because Plaintiff was not represented by counsel – to "ensure that an adequate record is developed during the disability hearing consistent with the issues raised" and requiring him to be informed about the facts relevant to his decision and the claimant's own version of those facts." *Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993)(citations omitted).   As a result, I conclude that the ALJ's assessment of Plaintiff's RFC in the first phase of the Step Four analysis was not grounded in substantial evidence in the record.

Accordingly,  IT IS ORDERED that the Commissioner's decision is REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.


Dated: July   27  , 2005 in Denver, Colorado.

                                                  BY THE COURT:


                                                     s/Lewis T. Babcock   
                                                  LEWIS T. BABCOCK, CHIEF JUDGE